IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SETH THOMAS THAYRES,

Plaintiff,

v.

GUARDIAN REAL ESTATE SERVICES, a domestic limited liability corporation; MARCY LANG; RAFAEL CAMPOS; TISHA GIBSON; and CARISSA WOODY,

Defendants.

Case No. 3:25-cv-00984-AB

OPINION & ORDER

Seth Thomas Thayres
2102 W Superior St. Apt 213
Duluth, MN 55806

Self-Represented Plaintiff

Christopher J. Drotzmann
Davis Rothwell Earle & Xochihua, PC
200 SW Market St. Suite 1800
Portland, OR 97201-5745

Attorney for Defendants

**BAGGIO, District Judge:**

Self-represented Plaintiff Seth Thomas Thayres brings this case against Defendants Guardian Real Estate Services, Marcy Lang, Rafael Campos, Tisha Gibson, and Carissa Woody. Plaintiff asserts five claims for relief arising under the Violence Against Women Act (VAWA), the Fair Housing Act (FHA), and Department of Housing and Urban Development (HUD) guidance and rules. Compl. ¶¶ 5(20)–(36), ECF No. 1. On June 3, 2026, Defendants moved for summary judgment. Defs.' Mot. Summ. J. ("Defs.' MSJ"), ECF No. 34. On June 12, 2026, Plaintiff moved for summary judgment. Pl.'s Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 38. For the following reasons, the Court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

## BACKGROUND

### I. The Parties

Plaintiff was a tenant at Renaissance Court Apartments ("Renaissance") in Wilsonville, Oregon. Answer ¶ 3, ECF No. 18. Renaissance is a recipient of HUD funding and is managed by Defendant Guardian. *Id.* ¶¶ 3–4. Defendant Guardian also manages Cascadian Terrace Apartments ("Cascadian"). *Id.* ¶ 4.

Defendant Lang was an "on-site community manager" at Renaissance and was involved with "lease enforcement, unit inspections, transfers, and complaints filed with governmental agencies." *Id.* ¶ 5. Defendant Campos is the "on-site community manager at Cascadian." *Id.* ¶ 8. Defendant Gibson is an employee of Defendant Guardian. *Id.* ¶ 6. Defendant Woody is a Portfolio Manager for Defendant Guardian. Compl. ¶ 3(e); Answer ¶ 7.

///

///

## II. September Incident

On September 6, 2024, Plaintiff emailed Defendant Guardian about an incident at Renaissance involving Defendant Lang.[1] Woody Decl. Ex. F, ECF No. 35. Plaintiff stated that as he and his friend were leaving his apartment, Defendant Lang stood in their way and asked if they needed help with anything. *Id.* at 1. Plaintiff responded that he lived at Renaissance, and he and his friend walked around Defendant Lang. *Id.* As Plaintiff and his friend were walking away, Defendant Lang "muttered something about 'faggots'" to a woman standing with Defendant Lang. *Id.* When Plaintiff returned to his apartment later that day, "there was an unauthorized guest and noise violation taped to [Plaintiff's] door." *Id.*

On September 16, 2024, Plaintiff emailed Renaissance that he had reported the incident "to HUD, FHA, State of Oregon, Clackamas County, City of Wilsonville and ACLU." *Id.* On October 11, 2024, Defendant Woody sent Plaintiff a letter stating that Defendant Guardian had investigated the incident but could not corroborate Plaintiff's allegations. *See* Woody Decl. Ex. D.

## III. VAWA Transfer

On December 9, 2024, Plaintiff submitted to Renaissance a VAWA transfer request related to domestic violence concerns. *See* Woody Decl. Ex. A, at 6–8. Plaintiff's VAWA transfer request was granted the next day. *Id.* at 6. On December 12, 2024, Plaintiff requested that he be transferred to a one-bedroom unit at Cascadian. *Id.* at 5. Defendant Lang responded the next day that Plaintiff should be moved "asap." *Id.* at 4–5.

---

[1] Defendants dispute that this incident occurred. *See* Defs.' MSJ 6 ("[Defendants] den[y] the allegation that [Defendant] Lang used a homophobic slur . . . .").

On December 17, 2024, Defendant Lang emailed Plaintiff a rental application for Cascadian and a reasonable accommodation request. *Id.* at 4. Plaintiff returned completed documents that same day. *Id.* Defendant Lang then forwarded those documents to Gabrielle Lang—Defendant Guardian's Roving Community Manager. *Id.* at 3–4.

On December 26, 2024, however, it was discovered that Plaintiff had not yet completed a waitlist application for Cascadian. *See id.* at 2–3. Accordingly, that same day, Defendant Lang emailed Plaintiff directing him to complete one as soon as possible. Pl.'s MSJ Attach. 12,[2] ECF No. 38-1. Plaintiff responded that evening: "I'm about to be homeless. I need to move ASAP or I'm going to be either freezing cold or back in the abusive situation." *Id.*

By December 30, 2024, Plaintiff appears to have completed the Cascadian waitlist application. *See* Woody Decl. Ex. E. Defendant Gibson thus inquired into Plaintiff's availability to meet with the Cascadian property manager and visit a unit. *See id.* at 1. Plaintiff responded two days later, however, that he was out of town; Plaintiff also asked if it was "possible to meet on zoom or on the phone." *Id.*

By January 3, 2025, Plaintiff's Cascadian screening had been denied. *See* Woody Decl. Ex. A, at 1. Plaintiff appealed his screening denial and was successful. *See* Woody Decl. Ex. B, at 4–6. Thus, on January 15, 2025, and January 16, 2025, Defendant Campos emailed Plaintiff asking whether he was available to visit Cascadian to complete documents. Woody Decl. Ex. C, at 1–2. Plaintiff responded on January 31, 2025, that he was out of town but that he could return by February 12, 2025, to complete any necessary paperwork to obtain the Cascadian unit. *Id.* at 1.

[2] Pincites to Plaintiff's Attachment refer to the ECF-generated page number.

On January 20, 2025, Defendant Lang emailed Plaintiff that the Cascadian manager had been trying to contact Plaintiff about his VAWA transfer. Pl.'s MSJ Attach. 11. Plaintiff responded on January 28, 2025, that he thought he was disqualified but that he could be back in a few days. *Id.* at 10. Defendant Lang replied on January 30, 2025, asking whether Plaintiff would be returning and whether there was an unauthorized occupant living in Plaintiff's Renaissance apartment. *Id.* Plaintiff responded that same day that the unauthorized occupant was no longer living in Plaintiff's Renaissance apartment; Plaintiff also asked whether he could return to his Renaissance apartment and live there. *Id.* at 9–10. Defendant Lang replied that she did not believe Plaintiff could return to Renaissance due to the eviction notice and the approval of the VAWA transfer request. *Id.* at 9. Defendant Lang stated, however, that the transfer to Cascadian was still an option. *Id.*

On February 19, 2025, Defendant Lang emailed Plaintiff asking whether he had an anticipated return date. *Id.* at 8. Defendant Lang also stated that Plaintiff will "receive a notice to quit or cure" and that Plaintiff needed to complete his recertification to secure his housing. *Id.*

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Both parties move for summary judgment as to all counts. *See* Defs.' MSJ 13; Pl.'s MSJ 10.[3] Finding no genuine dispute of material fact, the Court finds Defendants are entitled to judgment as a matter of law on all counts. Accordingly, the Court grants Defendants' Motion and denies Plaintiff's Motion.

### I. Count One

Plaintiff's first claim for relief alleges Defendants violated VAWA. Compl. ¶¶ 5(20)–(23); *see also* Pl.'s Opp'n Defs.' MSJ ("Pl.'s Opp'n") 5, ECF No. 36. But there is no civil

[3] Pincites to Plaintiff's Motion for Summary Judgment refer to the ECF-generated page number.

remedy under VAWA. *See United States v. Morrison*, 529 U.S. 598, 627 (2000). Accordingly, the Court grants Defendants' Motion as to Plaintiff's VAWA claim. *See Beverly v. County of Orange*, No. 22-55080, 2022 WL 14003695, at *1 (9th Cir. Oct. 24, 2022) (affirming the district court's dismissal of plaintiff's VAWA claim because there is no civil remedy).

## II. Count Two

Plaintiff's second claim for relief alleges Defendants created a hostile housing environment in violation of the FHA. Compl. ¶¶ 5(24)–(27); *see also* Pl.'s Opp'n 5–6. Plaintiff specifically points to Defendant Lang's homophobic comment from September 6, 2024. *See* Pl.'s MSJ 7 ("When Defendant . . . Lang used a targeted homophobic slur against Plaintiff and his guest, . . . [i]t stripped a disabled, vulnerable tenant of his right to the quiet enjoyment of his dwelling, establishing an FHA violation."). The Court finds Defendant Lang's conduct insufficient to support a hostile housing environment claim.

The FHA "prohibits the creation of a hostile housing environment based on 'race, color, religion, sex, familial status, or national origin.'" *Morris v. W. Hayden Ests. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128, 1146 (9th Cir. 2024) (quoting 42 U.S.C. § 3604(b)), *cert. denied*, 145 S. Ct. 1127 (2025). To prevail on a hostile housing environment claim, a plaintiff must show that they were "subjected to (1) severe or pervasive harassment (2) that was based on a protected characteristic . . . , and (3) that the defendant is responsible for the resulting hostile housing environment." *Id.* at 1147; *see also* 24 C.F.R. § 100.600(a)(2). The Ninth Circuit looks to Title VII's discrimination analysis "in examining [FHA] discrimination claims." *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997). Thus, courts consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with [the plaintiff's environment]." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also* 24 C.F.R. § 100.600(a)(2)(i)(A). "Whether unwelcome conduct is sufficiently severe or pervasive as to create a hostile environment is evaluated from the perspective of a reasonable person in the aggrieved person's position." 24 C.F.R. § 100.600(a)(2)(i)(C).

Here, even assuming Defendant Lang made a homophobic comment to Plaintiff and his friend, *see* Woody Decl. Ex. F, at 1, the Court finds such conduct insufficient to support a hostile housing environment claim. The Court finds the Ninth Circuit's holding in *Westendorf v. West Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 422 (9th Cir. 2013) controlling. In *Westendorf*, the plaintiff was subjected to "offensive sexual remarks" by a coworker on about four occasions, including remarks related to women's breasts, tampons, and orgasms. *Id.* at 419, 422. The plaintiff was also subjected to comments related to wearing a maid's costume by the same coworker and inaction by her supervisor. *Id.* at 419–20. Despite this conduct, the Ninth Circuit held that "the evidence, viewed favorably to her, did not show sexual harassment that was sufficiently severe or pervasive to alter the terms of [plaintiff's] employment and subject her to an abusive environment." *Id.* at 422. The court emphasized the limited number of remarks, that the harassment was not physical, and that the plaintiff did not say her work was impacted. *See id.*

Here, along the same lines, Defendant Lang's conduct was a single instance of harassment. *See* Woody Decl. Ex. F, at 1. In addition, Defendant Lang did not speak directly to Plaintiff; she "muttered" her comment to another person. *Id.* And though Plaintiff asserts that Defendant Lang tried to stand in Plaintiff's way, Plaintiff identifies no physical harassment; indeed, Plaintiff and his friend were able to walk around Defendant Lang. *See id.* The Court acknowledges that "harassment by someone in a position of authority is more likely to be

emotionally and psychologically threatening," *Salisbury v. Hickman*, 974 F. Supp. 2d 1282, 1293 (E.D. Cal. 2013); however, the Court finds that Defendant Lang's conduct—a single offensive utterance—would not "interfere with or deprive" a reasonable person of their "right to use" and "enjoy [their] home," *id.* at 1290. For these reasons, the Court finds that Defendant Lang's conduct, as alleged by Plaintiff—though hurtful and highly inappropriate—does not give rise to a triable hostile housing environment claim under the law of this circuit. *See Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005) ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citation modified)). Accordingly, the Court grants Defendants' Motion as to Plaintiff's second claim.

**III. Count Three**

Plaintiff's third claim for relief alleges Defendants failed to provide reasonable accommodations in violation of the FHA. Compl. ¶¶ 5(28)–(30); *see also* Pl.'s Opp'n 6. Plaintiff specifically points to Defendant Campos's failure to meet with Plaintiff virtually. *See* Pl.'s MSJ 9 ("Defendant Campos's rigid insistence that Plaintiff appear in person on January 16, 2025, to complete standard paperwork directly ignored the physical reality of his displacement and the limitations of his disabilities."). The Court finds that Plaintiff fails to demonstrate Defendants denied his requests for accommodation.

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of that person. 42 U.S.C. § 3604(f)(2)(A). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal

opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To prevail on a reasonable accommodation claim, a plaintiff must establish the following elements:

> (1) that the plaintiff . . . is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

Here, the Court finds that Plaintiff has not shown that Defendants refused to provide him a reasonable accommodation. *See id.* (affirming summary judgment because the defendant "never refused to make the requested accommodation"). Plaintiff points to Defendant Campos's January 15, 2025, and January 16, 2025, emails inquiring into Plaintiff's availability to sign paperwork related to the transfer in-person, but nowhere in those emails did Plaintiff request an accommodation that Defendant Campos refused. *See* Woody Decl. Ex. C, at 1–2; Pl.'s MSJ Attach. 15–16. The closest Plaintiff gets is his January 1, 2025, email to Defendant Gibson requesting that he be able to meet with the Cascadian property manager "on zoom or on the phone." Woody Decl. Ex. E, at 1. But again, Plaintiff provides no evidence that Defendants refused this request or even that Plaintiff's request was causally related to his handicap. *See Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1191 (9th Cir. 2021) ("[T]here must be a causal link between the requested accommodation and the plaintiff's disability." (internal quotation marks omitted)). Accordingly, the Court finds Plaintiff fails to establish his reasonable accommodation claim, and the Court grants Defendants' Motion as to this claim.

## IV. Count Four

Plaintiff's fourth claim for relief alleges Defendants retaliated against him for exercising his rights under the FHA. Compl. ¶¶ 5(31)–(34); *see also* Pl.'s Opp'n 7. Plaintiff specifically

points to the delays in processing his VAWA transfer request and Defendants' service of a notice to quit or cure. *See* Pl.'s MSJ 8. The Court finds Plaintiff fails to establish retaliation.

Under 42 U.S.C. § 3617, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . . any right granted or protected by" the FHA. *See Walker v. City of Lakewood*, 272 F.3d 1114, 1123 (9th Cir. 2001). To prevail on a retaliation claim, a plaintiff must establish that they "engaged in a protected activity, . . . an adverse housing consequence is causally linked to that activity, and . . . there was resulting damage." *Jay v. Grand Mgmt. Servs., Inc.*, 783 F. Supp. 3d 1257, 1276 (D. Or. 2025). The adverse action "must be in the form of coercion, intimidation, threats, or interference." *Walker*, 272 F.3d at 1128 (citation modified). "If a plaintiff has presented a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision." *Id.*

Here, the Court finds that Plaintiff has not established that any of his purported adverse housing consequences were causally linked to his exercise of rights under the FHA. To start, Plaintiff argues that "by December 22, 2024," his VAWA transfer was "stalled," and that "in January 2025," Cascadian denied his VAWA transfer request "using a background history that had already been accommodated." Pl.'s MSJ 8. But Plaintiff puts forth no evidence that these purported housing consequences were causally linked to his exercise of rights under the FHA. By contrast, Defendants put forth evidence demonstrating that they sought to process Plaintiff's VAWA transfer request as quickly as possible, *see, e.g.*, Woody Decl. Ex. A, at 5 (Defendant Lang acknowledging Plaintiff's decision to transfer to Cascadian and stating that "we will be able to move you asap"), and that Plaintiff's screening denial was successfully appealed, *see* Woody Decl. Ex. B, at 4–6. Plaintiff also points to Defendants' service of a notice to quit or cure

as an adverse housing consequence, Pl.'s MSJ 8, but again, Plaintiff does not put forth any evidence demonstrating that Defendants' conduct was causally related to his exercise of rights under the FHA. By contrast, the evidence shows that the notice to quit or cure was related to Plaintiff's failure to complete his recertification. *See* Pl.'s MSJ Attach. 8.

For these reasons, the Court finds that Plaintiff has not established his prima facie retaliation claim. Moreover, even assuming Plaintiff did establish a prima facie claim, the Court finds that Defendants have articulated nondiscriminatory reasons for their actions and that Plaintiff has not shown those reasons were merely pretexts for discrimination. *See Walker*, 272 F.3d at 1128. Accordingly, the Court grants Defendants' Motion as to Plaintiff's fourth claim.

**V. Count Five**

Plaintiff's fifth claim for relief alleges Defendants violated HUD rules and guidelines. *See* Compl. ¶ 1(f). Plaintiff's Motion specifically notes 24 C.F.R. § 5.2005(e)(5), which provides that, under VAWA, an emergency transfer plan "must allow a tenant to make an internal emergency transfer . . . when a safe unit is immediately available." *See* Pl.'s MSJ 10. Plaintiff's Motion also emphasizes Defendants' conduct more generally. *See id.* ("[W]eaponizing administrative delays against a domestic survivor with known mental health disabilities constitutes discriminatory negligence under the FHA."). The Court finds that Plaintiff's fifth claim for relief reasserts his claims under VAWA and the FHA. Accordingly, the Court grants Defendants' Motion as to Plaintiff's fifth claim.

///

///

///

///

**CONCLUSION**

The Court GRANTS Defendants' Motion for Summary Judgment [34] and DENIES Plaintiff's Motion for Summary Judgment [38].

IT IS SO ORDERED.

DATED this 14th day of October, 2026.

AMY M. BAGGIO
United States District Judge